# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARGIE ANN SMIDT, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-14-147-RAW-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

The claimant Margie Ann Smidt requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the undersigned Magistrate Judge RECOMMENDS that the Commissioner's decision be REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering

h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on June 7, 1959, and was fifty-three years old at the time of the administrative hearing (Tr. 75). She completed high school, and has past relevant work as a sewing machine operator (Tr. 62, 223). The claimant alleges an amended onset date of November 1, 2011, due to a back injury (Tr. 110, 223).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 21, 2011. The Commissioner denied her application. Following an administrative hearing, ALJ Bernard Porter determined that the claimant was not disabled in a written opinion dated July 18, 2013 (Tr. 51-64). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform light work as defined

-3-

in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, that she could lift/carry 20 pounds occasionally or 10 pounds frequently, stand/walk for up to six hours in an eight-hour workday, and sit about six hours in an eight-hour workday, but that she must have a sit/stand option which allowed her to change positions at least every 30 minutes. Additionally, he found that she could never climb ladders, ropes, or scaffolds, nor could she crawl; she was limited to occasional use of foot and hand controls; and she could never reach overhead or be exposed to environmental temperature extremes. Finally, he determined that, due to episodic symptomatology, she would miss up to one day of work per month, and would be off task up to 5% of the workday (Tr. 54). The ALJ then concluded that although the claimant was unable to perform her past relevant work, there was work she was capable of performing, *i. e.*, ticket seller (with a reduction of 1/3 of the jobs available due to the sit/stand requirement), office helper, and collater (Tr. 63).

**Review**

The claimant's sole contention of error is that the Appeals Council erred in failing to consider evidence submitted after the ALJ's written opinion. The undersigned Magistrate Judge agrees, and the decision of the Commissioner should therefore be reversed.

The ALJ found the claimant had the severe impairments of breast cancer, thoracic fracture, osteoporosis, and foot bunions with hallux valgus deformity (Tr. 53). As relevant to this appeal, the medical evidence reveals that the claimant was diagnosed with breast cancer in 2009, and underwent a lumpectomy and sentinal node biopsy on March

2, 2009 (Tr. 301), which was followed by radiation treatment (Tr. 312, 369-437). In 2009, the claimant was also diagnosed with a T11 fracture and underwent a kyphoplasty (Tr. 316). A May 7, 2009 bone density assessment revealed osteopenia with a moderate fracture risk (Tr. 347). On April 13, 2010, the claimant was considered clinically stable status post breast conservation therapy, and again on June 8, 2011 (Tr. 356, 367). On June 17, 2010, a nuclear bone scan demonstrated T11 activity related to fracture and old kyphoplasty, right knee activity most likely due to mild degenerative joint disease (Tr. 359). The bone scan was considered to have a low probability for metastatic malignancy (Tr. 359). A 2012 note listing "Industrial Limitations for Employer," indicated that the claimant could do no bending or lifting over five pounds (Tr. 444). Treatment notes from Dr. Geo Chacko on April 16, 2012 indicate a diagnosis of degenerative joint disease of the vertebrae (Tr. 462).

Corey R. Babb, D.O., completed a physical examination of the claimant on January 25, 2012, assessing her with chronic back pain secondary to thoracic fracture, with resultant skeletal deformity, as well as breast cancer (currently not on medication) (Tr. 439). A worksheet related to the claimant's lumbosacral spine indicated weak heel/toe walking, tenderness related to the thoracic spine, and muscle spasm T8-T12 (443). Two months later, a reviewing physician found the claimant could perform medium work with no additional limitations (Tr. 452).

In 2013, the claimant underwent a foot surgery to treat a deformity (Tr. 482). Diagnostic imaging of the lumbar spine revealed mild degenerative changes and chronic

T11 compression fracture (Tr. 488).

In his written opinion, the ALJ thoroughly summarized the claimant's hearing testimony, as well as the medical evidence contained in the record before him (Tr. 56-61). He gave "some weight" to the state expert opinions, but found the claimant to have greater physical limitations as demonstrated by the evidence submitted after the issuance of those opinions, and gave "greater weight" to Dr. Babb's opinion as consistent with the weight of the evidence (Tr. 62).

Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council. Included in that submission were treatment records and an RFC assessment from Nelson Onaro, D.O., who began treating the claimant shortly after the ALJ's decision was issued. Treatment notes indicate that his treatment largely consisted of medication management, and that he assessed her with back pain, compression fracture T11, right knee pain, left hip pain, right heel pain, migraines, anxiety/depression, GERD, peptic ulcer disease, history of breast cancer, obesity, and insomnia (Tr. 36-39). Five months later, on December 16, 2013, Dr. Onaro completed a "Medical Opinion Re: Sedentary Work Requirements," in which he indicated that, *inter alia*: (i) the claimant could not stand and/or walk for up to two hours in an eight-hour workday, (ii) she could not sit up to six hours in a normal seated position, (iii) she could lift and carry ten pounds but could not lift five pound on a repetitive basis, (iv) she could not sustain activity at a pace and with the attention to task as would be required in the competitive workplace, (v) she was likely to have significant difficulty concentrating due

to the symptoms caused by her impairments, (vi) her symptoms would require her to take unscheduled breaks, and (vii) she could not attend any employment on a sustained basis (Tr. 29). As objective findings, he referred to the claimant's history of T11 fracture and degenerative joint disease of the hips (Tr. 29). He further completed an assessment of the claimant's pain, indicating, in sum, that the claimant was limited by her pain and the side effects of her medications, and that her underlying conditions of chronic back pain, left hip pain and right knee pain were consistent with her pain (Tr. 30). He gave her a poor prognosis, and indicated that her physical impairments were affected by depression and anxiety, that she was capable of low stress jobs, and that she could sit two hours at one time and stand one hour at a time, but stand/walk less than two hours in an eight-hour workday and sit about two hours in an eight-hour workday (Tr. 32-33). He indicated she needed a job where she could sit/stand at will, would need unscheduled ten- to fifteen-minute breaks, and only occasionally lift/carry less than ten pounds in a competitive work situation (Tr. 33). He indicated she could never climb ladders; rarely twist, stoop/bend, or climb stairs; and occasionally crouch/squat, and that she would likely be absent about three days per month (Tr. 34).

The claimant's contention regarding her impairments and their effect on her ability to work is bolstered by the evidence contained in the record but submitted after the ALJ issued his opinion on remand. In this regard, it provides support for the consideration of all of the claimant's impairment *in combination*. *See Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to

consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]. And a proper analysis requires the Appeals Council to consider such additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 2), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. In particular, Dr. Onara's physical assessment and treatment records were never presented to the ALJ prior to his decision and were thus neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 1996 WL 195124, at *2 (10th Cir. April 23, 1996). In finding the claimant could perform a limited range of light work, the ALJ relied, at least in part, on the lack of statements by any treating physician with regard to the claimant's limitations. In fact, the ALJ specifically stated that "none of the claimant's providers documented that the claimant had any

limitations which would restrict [her] ability to perform work or which precluded her from performing work altogether" (Tr. 62). But Dr. Onara's assessment strongly suggests the claimant could not work on a full-time basis due to her chronic pain-producing impairments (Tr. 28-39). This evidence suggests the claimant has impairments discounted or completely unaccounted for in her RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). The claimant meets the insured status through December 31, 2016, so all of the records are relevant to the claimant's condition as to the existence or severity of her impairments. *See Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir. 1984) ("[M]edical evidence of a claimant's condition subsequent to the expiration of the claimant's insured status is relevant evidence because it may bear upon the severity of the claimant's condition before the expiration of his or her insured status."), *citing Bastian v. Schweiker,* 712 F.2d 1278, 1282 n.4 (8th Cir. 1983); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983); *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir. 1981); *Poe v. Harris,* 644 F.2d 721, 723 n. 2 (8th Cir. 1981); *Gold v. Secretary of H.E.W.,* 463 F.2d 38, 41-42 (2d Cir. 1972); *Berven v. Gardner,* 414 F.2d 857, 861 (8th Cir. 1969).

The evidence presented by the claimant after the administrative hearing thus *does* qualify as new and material evidence under C.F.R. §§ 404.970(b) and 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the

record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). The ALJ had no opportunity to perform the proper analysis, and while the Appeals Council considered this new evidence, they failed to analyze it in accordance with the aforementioned standards. In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ should re-assess the claimant's RFC in light of the new evidence, and then re-determine the work she can perform, if any, and ultimately whether she is disabled.

## Conclusion

As set forth above, the undersigned Magistrate Judge PROPOSES that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the undersigned RECOMMENDS that the decision of the Commissioner be REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 10th day of September, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**